UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| SHEILA S., <br><br>         Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, Commissioner of the Social Security Administration, <br><br>         Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 2:25-cv-00260 <br><br> Magistrate Judge Daphne A. Oberg |

Sheila S.[1] brought this action for judicial review of the denial of her applications for disability insurance benefits and supplemental security income by the Commissioner of the Social Security Administration.[2]  The Administrative Law Judge (ALJ) who addressed Ms. S.'s applications determined she did not qualify as disabled.[3]  Ms. S. claims error relating to the vocational expert's testimony and the ALJ's evaluation of medical testing by a psychological consultative examiner.[4]  Because the ALJ applied

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in court orders in certain cases, including social security cases, the court refers to the plaintiff by first name and last initial only.

[2] (*See* Compl., Doc. No. 2.)

[3] (Certified Tr. of Admin. R. (Tr.) 15–32, Doc. No. 11.)

[4] (See Opening Br., Doc. No. 14 at 1–2, 20, 23.)  Because the opening brief lacks consistent internal numbering, citations to this document refer to the CM/ECF pagination.

the correct legal standards and substantial evidence supports his findings, the

Commissioner's decision is affirmed.[5]

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for

judicial review of the Commissioner's final decision.  This court reviews the ALJ's

decision to determine whether substantial evidence supports his factual findings and

whether he applied the correct legal standards.[6]  "[F]ailure to apply the correct legal

standard or to provide this court with a sufficient basis to determine that appropriate

legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8]

Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is

"more than a mere scintilla."[9]  Substantial evidence is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."[10]  "The possibility

of drawing two inconsistent conclusions from the evidence does not prevent an

---

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (Doc. No. 5.)

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation omitted).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

[9] *Id.* at 103 (citation omitted).

[10] *Id.* (citation omitted).

administrative agency's findings from being supported by substantial evidence."[11]  And the court may not reweigh the evidence nor substitute its judgment for that of the ALJ.[12]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[13] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) she has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) she has the residual functional capacity to perform past relevant work; and

---

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[13] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[14] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

5) she has the residual functional capacity to perform other work, considering her age, education, and work experience.[15]

In the first four steps, the claimant has the burden of establishing disability.[16]  And at step five, the Commissioner must show the claimant retains the ability to perform other work in the national economy.[17]

## PROCEDURAL HISTORY

Ms. S. applied for disability insurance benefits and supplemental security income.[18]  After an administrative hearing,[19] the ALJ issued a decision, finding Ms. S. not disabled and denying benefits.[20]

At step two of the sequential evaluation, the ALJ found Ms. S. had the severe impairments of post-traumatic stress disorder (PTSD), bipolar disorder, depressive disorder, anxiety disorder, paranoid personality disorder, and dissociative personality disorder.[21]  The ALJ determined Ms. S.'s bunions, acute pyelonephritis, sepsis, and

---

[15] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] (*See* Tr. 15.)

[19] (Tr. 38–81.)

[20] (Tr. 15–32.)

[21] (Tr. 18.)

4

alcohol use disorder were nonsevere because they did not meet the durational requirement for severity.[22]

At step three, the ALJ concluded Ms. S.'s impairments did not meet or medically equal an impairment listing.[23]  The ALJ addressed the four areas of mental functioning known as the "paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.[24]  He found Ms. S. had a marked limitation in concentrating, persisting, or maintaining pace, and moderate limitations in the other three areas.[25]

The ALJ then found Ms. S. had the residual functional capacity to perform "medium work" with certain nonexertional limitations.[26]  Specifically, he found she "must work in a moderate or quiet noise environment; she can understand, remember, and carry out simple instructions relating to routine, repetitive tasks; she can adapt to occasional changes in a routine work setting; and she can have occasional contact with the public, coworkers, and/or supervisors."[27]

---

[22] (*Id.*)

[23] (Tr. 18–20.)

[24] (Tr. 19–20.)

[25] (*Id.*)

[26] (Tr. 20.)

[27] (*Id.*)

At step four, based on this residual functional capacity assessment and the testimony of a vocational expert, the ALJ found Ms. S. could not perform past work.[28] But at step five, based on the expert's testimony, the ALJ found Ms. S. capable of other jobs in the national economy.[29]   Accordingly, the ALJ found Ms. S. not disabled and denied her claims.[30]   This decision became final when the Appeals Council denied Ms. S.'s request for review.[31]

## ANALYSIS

Ms. S. raises several claims of error relating to the residual functional capacity (RFC) determination, the vocational expert's testimony, and the ALJ's determination that she could perform other jobs in the national economy.   First, she argues the ALJ provided an "incomplete" hypothetical RFC to the vocational expert because it did not include Ms. S.'s memory testing results.[32]   Next, she asserts the ALJ violated her due process rights by not allowing her attorney to question the vocational expert about her memory testing results.[33]   Finally, she contends the ALJ erred by failing to evaluate the

---

[28] (Tr. 29–30.)  Specifically, the ALJ found she could not perform past work for purposes of her Title II claim, and she had no past relevant work for purposes of her Title XVI claim.  (*Id.*)

[29] (Tr. 30–31.)

[30] (Tr. 31–32.)

[31] (Tr. 1–4.)

[32] (Opening Br., Doc. No. 14 at 1, 23–25.)

[33] (*Id.* at 2, 14–15, 31–33.)

persuasiveness of evidence from the psychological consultative examiner.[34]  As

explained below, Ms. S. has demonstrated no error in the ALJ's decision.

    A.  Evaluation of Evidence from the Psychological Consultative Examiner

Ms. S.'s challenge to the ALJ's evaluation of evidence from the psychological

consultative examiner is addressed first.

A claimant's RFC is the most she can do in a work setting considering her

limitations.[35]  In assessing RFC, the ALJ considers "the extent to which an individual's

medically determinable impairment(s), including any related symptoms, such as pain,

may cause physical or mental limitations or restrictions that may affect his or her

capacity to do work-related physical and mental activities."[36]  The ALJ considers all

relevant medical and other evidence in the record.[37]

In determining a claimant's RFC, an ALJ must evaluate the persuasiveness of

medical opinion evidence, including explaining how he considers the supportability and

consistency of medical opinions.[38]  However, agency regulations define "medical

opinion" narrowly as "a statement from a medical source about what [the claimant] can

still do despite [the claimant's] impairment(s) and whether [the claimant has] one or

---

[34] (*Id.* at 20, 29–31.)

[35] *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996).

[36] SSR 96-8p, 1996 SSR LEXIS 5, at *5.

[37] *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

[38] *Id.* §§ 404.1520c(b)(2), (c), 416.920c(b)(2), (c).

more impairment-related limitations or restrictions" in certain enumerated work-related abilities.[39]  These include the claimant's ability to perform "physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions," and "mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting."[40]

The social security regulations differentiate "medical opinions" from "objective medical evidence," which is defined as "medical signs, laboratory findings, or both."[41] And both categories are distinguished from "other medical evidence," which includes "judgments about the nature and severity of [the claimant's] impairments, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."[42]

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."[43]  "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted

---

[39] *Id.* §§ 404.1513(a)(2), 416.913(a)(2).

[40] *Id.* §§ 404.1513(a)(2)(i)–(ii), 416.913(a)(2)(i)–(ii).

[41] *Id.* §§ 404.1513(a)(1), 416.913(a)(1).

[42] *Id.* §§ 404.1513(a)(3), 416.913(a)(3).

[43] *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."[44]

Dr. Paney performed a consultative psychological examination of Ms. S. and administered several tests, including the Montreal Cognitive Assessment (MoCA) and the Wechsler Memory Scale – Fourth Edition (WMS-IV).[45] She described Ms. S.'s MoCA score as "indicative of possible impaired functioning."[46] On the WMS-IV, Ms. S. scored "extremely low to borderline" in visual and immediate memory and "borderline to low average" in auditory and delayed memory.[47] Dr. Paney noted these scores "likely underestimate[d] her abilities" because Ms. S. appeared to put forth "variable effort on the testing measures."[48] Dr. Paney observed Ms. S. "appeared confused at times, and it was unclear whether this was due to cognitive deficit, anxiety, problems with focus, or another etiology."[49] She diagnosed Ms. S. with social anxiety disorder, major depressive disorder, "possible" unspecified psychotic disorder, "possible" PTSD, and "likely" opioid dependence.[50]

---

[44] *Id.* at 1010.

[45] (*See* Tr. 1169–76.)

[46] (Tr. 1172.)

[47] (Tr. 1172–73.)

[48] (Tr. 1173.)

[49] (Tr. 1174.)

[50] (*Id.*)

Ms. S. contends the ALJ erred by failing to "formally evaluate the persuasiveness" of Dr. Paney's "medical testing."[51]  But only medical *opinions* must be evaluated for persuasiveness.[52]  The medical testing Dr. Paney performed did not qualify as medical opinion evidence under the agency's definition.  Dr. Paney's report contained objective medical evidence (test results) and other medical evidence (clinical findings and diagnoses).  But Dr. Paney did not provide opinions regarding specific "impairment-related limitations or restrictions" in Ms. S.'s ability to perform "mental demands of work activities."[53]  Because Dr. Paney did not provide medical opinion evidence, the ALJ was not required to evaluate the persuasiveness of her report.

The record shows the ALJ adequately considered Dr. Paney's report in assessing Ms. S.'s RFC.  The ALJ described the report in detail in the RFC analysis, including Ms. S.'s test results and Dr. Paney's observations and diagnoses.[54]  Earlier, in the "paragraph B" analysis at step three, the ALJ noted Ms. S.'s variable effort on Dr. Paney's testing indicated "the results of that testing, such as extremely low memory scores, may not be a true indicator of the claimant's ability to understand, remember, or apply information."[55]  In summarizing his RFC findings, the ALJ again noted Dr. Paney

---

[51] (Opening Br., Doc. No. 14 at 20.)

[52] 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

[53] *Id.* §§ 404.1513(a)(2)(ii), 416.913(a)(2)(ii).

[54] (Tr. 25–26.)

[55] (Tr. 19.)

described Ms. S.'s effort during memory testing as "variable."[56]  The ALJ concluded that "limitations of understanding, remembering, or carrying out simple instructions relating to routine, repetitive tasks, occasional contact with supervisors, co-workers, and the public, and occasional changes in a routine work setting [were] largely consistent with [Ms. S.'s] activities of daily living."[57]  This record demonstrates the ALJ considered and discussed the evidence from Dr. Paney in the RFC analysis.  Nothing further was required.

B.  Vocational Expert's Testimony

Ms. S. contends the ALJ improperly relied on vocational expert testimony provided in response to an "incomplete hypothetical"—because the expert did not address whether "specific testing capacities" would render Ms. S. unable to perform the jobs she identified.[58]  Ms. S. asserts, as a result, the vocational expert's testimony cannot constitute substantial evidence supporting the ALJ's step-five finding.[59]  She also argues the ALJ violated her due process rights by preventing her attorney from questioning the expert about Ms. S.'s memory test results.[60]

Ms. S.'s arguments misconstrue the role of the vocational expert.  It is true that a vocational expert's testimony cannot constitute substantial evidence if the hypothetical

---

[56] (Tr. 29.)

[57] (*Id.*)

[58] (Opening Br., Doc. No. 14 at 23.)

[59] (*Id.*)

[60] (*Id.* at 2, 14–15, 31–33.)

questions posed to the expert "do not relate with precision all of a claimant's impairments."[61]  But the ALJ, not the vocational expert, is responsible for determining a claimant's RFC based on the record evidence.[62]  Agency policy provides that an ALJ must not permit a vocational expert to testify on medical matters (such as the test results at issue here) or to make her own assessment of a claimant's RFC.[63]  If the hypothetical question to the vocational expert includes all limitations the ALJ ultimately included in the RFC, the expert's testimony is a proper basis for step-five findings.[64]

Here, the ALJ posed a hypothetical question to the vocational expert matching the ultimate RFC determination.[65]  It was not incomplete; it included all limitations the ALJ assessed in the RFC and properly omitted Ms. S.'s medical test results.  In response to that hypothetical, the vocational expert testified a person with those limitations (and Ms. S.'s vocational profile) could perform three jobs in the national economy.[66]  Where the hypothetical accurately reflected the assessed RFC, the

---

[61] *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (citation omitted).

[62] *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000).

[63] *See* Hearings, Appeals, and Litigation Law Manual (HALLEX) 1-2-6-74(C), 1994 WL 637383 (revised June 16, 2016).

[64] *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).

[65] (Tr. 76.)

[66] (Tr. 76–77.)

vocational expert's testimony constitutes substantial evidence supporting the ALJ's step-five finding.[67]

Likewise, the ALJ did not violate due process by preventing Ms. S.'s attorney from questioning the expert about Ms. S.'s memory test results.  While social security hearings are "subject to procedural due process considerations,"[68] the ALJ generally has discretion as to how to conduct the hearing.[69]  This discretion extends to cross-examination of witnesses—which "should remain limited" in disability proceedings.[70] Moreover, "[a] due process claim will not succeed . . . if the claimant fails to show prejudice."[71]  This generally requires showing "the adjudication was infected by some prejudicial, fundamentally unfair element," the absence of which would have likely resulted in a different outcome.[72]

---

[67] To the extent Ms. S.'s "incomplete hypothetical" argument could be construed as challenging the ALJ's RFC finding, the challenge is inadequately developed.  Ms. S.'s only specific challenge to the RFC determination is her argument that the ALJ erred by not evaluating the persuasiveness of Dr. Paney's medical testing.  That argument fails, as explained above.  Where Ms. S. raises no other specific claims of error relating to the RFC determination, she has demonstrated no error in the ALJ's RFC findings.

[68] *Allison v. Heckler*, 711 F.2d 145, 147 (10th Cir. 1983).

[69] *See Richardson v. Perales*, 402 U.S. 389, 400 ("[T]he conduct of the hearing rests generally in the examiner's discretion.").

[70] *Galdean v. Barnhart*, 46 F. App'x 920, 923 (10th Cir. 2002) (unpublished) (citation omitted).

[71] *Mays v. Colvin*, 739 F.3d 569, 573 (10th Cir. 2014).

[72] *Id.* at 573–74.

Here, Ms. S.'s attorney cross-examined the expert during the hearing.[73]  But when Ms. S.'s attorney indicated his intent to ask the expert about memory testing "scores," the ALJ limited him to asking the expert about "hypotheticals," not "individual testings."[74]  Still, Ms. S.'s attorney tried to ask the expert about Ms. S.'s memory test results.[75]  The ALJ interjected, telling the attorney he would not allow the question unless it were framed in "vocational terms," and offering examples.[76]  Ms. S.'s attorney asked if he could question the expert about "how vocational experts work in placing people."[77]  The ALJ disallowed this, explaining the ALJ does not determine the placement process.[78]  Ms. S.'s attorney then proceeded with the cross-examination, asking the expert whether the jobs she identified could be performed by someone who was "unable to accept any kind of criticism" or who "couldn't remember simple one-two [step] instructions."[79]  He also asked about the noise levels of the identified jobs.[80]

---

[73] (Tr. 78–80.)

[74] (Tr. 70–71.)

[75] (Tr. 78.) Ms. S.'s counsel began his question as follows, before the ALJ interjected: "So if we add to Judge's first hypothetical regarding things.  If we looked at the—her memory, this is below average memory in the visual working memory, immediate memory, and—." (*Id.*)

[76] (*Id.*)

[77] (*Id.*)

[78] (*Id.*)

[79] (Tr. 79.)

[80] (Tr. 79–80.)

The restrictions the ALJ imposed on the cross-examination of the expert did not violate Ms. S.'s due process.  Where a vocational expert cannot testify about medical matters, the ALJ properly prevented Ms. S.'s attorney from eliciting such testimony by asking about memory test results.  The ALJ's requirement that questions posed to the expert be framed in "vocational terms" was appropriate, given the expert's role.  And Ms. S.'s attorney cross-examined the expert subject to that limitation.  Further, Ms. S. has not shown "how vocational experts work in placing people"—the other topic the ALJ disallowed—is material to the ALJ's decision.  In short, Ms. S. has not demonstrated the ALJ imposed prejudicial or fundamentally unfair limits on the cross-examination.

Ms. S. also suggests the ALJ prevented her attorney from "cross-examin[ing] the basis of the vocational expert's opinion of the [Dictionary of Occupational Titles (DOT)] assessment of [Special Vocational Preparation (SVP)] 2 work."[81]  Ms. S. notes the three jobs the expert identified required an SVP level of 2, with training lasting up to a month.[82]  She suggests she would be unable to meet this requirement given her memory test results and her testimony that she could not follow a recipe.[83]  But the ALJ did not prevent Ms. S.'s attorney from questioning the expert about the DOT's requirements for the identified jobs.  Indeed, Ms. S.'s attorney elicited testimony from

---

[81] (Opening Br., Doc. No. 14 at 2.)

[82] (*Id.* at 8.)

[83] (*See id.* at 8, 28.)

the expert regarding noise levels in the DOT for the identified jobs.[84]  In other words, the ALJ's restrictions did not prohibit appropriate questioning regarding the DOT's requirements, but the ALJ properly prohibited Ms. S.'s attorney from eliciting expert testimony regarding medical evidence.

Finally, Ms. S. claims there was an "apparent conflict" between the vocational expert's testimony and the DOT's requirements for the identified jobs.[85]  But Ms. S. fails to identify any conflict between the assessed RFC and the DOT's requirements.  She provides no authority supporting any suggestion that an SVP level of 2 is inconsistent with her assessed ability to "understand, remember, and carry out simple instructions relating to routine, repetitive tasks."[86]  Moreover, the vocational expert confirmed her testimony was consistent with the DOT.[87]  Accordingly, Ms. S. has shown no error relating to a conflict with the DOT.

In sum, Ms. S. has demonstrated no error relating to the vocational expert's testimony or the ALJ's step-five findings.

---

[84] (*See* Tr. 79–80.)

[85] (Opening Br., Doc. No. 14 at 28.)

[86] (Tr. 20.)

[87] (*See* Tr. 77–78.)

## CONCLUSION

The Commissioner's decision is affirmed.

DATED this 23rd day of March, 2026.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge